[No. 20963.   *En Banc.*   June 4, 1929.]

*In the Matter of the Estate of* Margaret Cross, *Deceased.*

J. L. Cross, *Appellant,* v. The State of Washington *et al., Respondents.*[1]

[1]Reported in 278 Pac. 414.

*Miller & Freese,* for appellant.

*G. W. H. Davis, W. F. Van Ruff* and *F. B. Danskin,* for respondents.

*Schwellenbach, Merrick & Macfarlane* and *George Mathieu, amici curiae.*

FRENCH, J.—LeRoy W. Cross was killed in the World war on October 22, 1918, dying intestate and having never married. He left surviving him a father, mother, brothers and sisters. At the time of his death, he was carrying a $10,000 policy of war risk insurance issued by the Federal government, his mother being designated as his beneficiary. After the death of the boy, and while the mother was receiving monthly installments under the policy, the father died testate, leaving all his estate to his wife. Thereafter, and on April 29, 1926, the mother, Margaret Cross, died, leaving her estate to her sons and daughters, share and share alike. After the death of Margaret Cross, and while her estate was being probated, similar proceedings were commenced for the estate of LeRoy W. Cross, there being unpaid installments under his said policy of the then value of $6,983. In an opinion of one of the departments of this court (*In re Cross' Estate,* 147 Wash. 441, 266 Pac. 711), it was held that this residue should go to those who were the heirs of Le Roy W. Cross at the time of his death, and as the heirs were his father and mother, and as the father had died leaving his estate to his wife, this insurance should be distributed to the estate of Margaret Cross, deceased. The same conclusion was reached in the companion case of *In re Cross' Estate,* 147 Wash. 699, 266 Pac. 712. Later, in an opinion of the same department of this court, it was held (*In re Cross' Estate,* 148 Wash. 422, 269 Pac. 339) that, as the estate of Margaret Cross, by adding the proceeds of the war risk insurance pol-

icy, exceeded in value the sum of ten thousand dollars, the distributive shares of the beneficiaries of her estate were subject to the state inheritance tax, thus deciding that the proceeds of war risk insurance are not exempt from such tax.

Upon rehearing, the correctness of these prior decisions involving the disposition of the proceeds of this insurance are very seriously questioned, it being contended that, upon the death of the designated beneficiary, Margaret Cross, the residue should go to the remaining survivors of LeRoy W. Cross, who are within "the permitted class of beneficiaries" as provided by the war risk insurance act, and that such persons would take as beneficiaries under the policy and not as heirs at law, and that it necessarily follows from this that the state inheritance tax could not be imposed upon the benefits so accruing.

Going back to chapter 105 of vol. 40 of the United States Stat. at Large, p. 398 (Oct. 6, 1917), we find that the government undertook a colossal task. It created the bureau of war risk insurance, and appropriated $100,000 for its initial expenses. It appropriated $141,000,000 for monthly allotments to the *"family"* of each enlisted man while in service. It appropriated $12,150,000 for monthly compensation for death or disability resulting from personal injury suffered, or disease contracted by one in such service, the compensation to be for the benefit of the man or his *wife, children and/or dependent widowed mother.* It appropriated $23,000,000 for war risk life insurance, stating (Section 400) that it was granted,

". . . in order to give to every . . . enlisted man . . . when employed in active service . . . greater protection for themselves and their *dependents."* By Section 402 of the same act, it was provided that this insurance "shall not be assignable, and

shall not be subject to the claims of creditors of the insured or of the beneficiary," and, further, that the insurance "shall be payable only to a *spouse, child, grand-child, parent, brother or sister."* (This permitted class was added to by the subsequent act of December 24th, 1919.) It granted the right to the insured to select the beneficiary, "but only within the classes . . . provided." Section 402 of 40 U. S. Stat. at. Large, p. 407, further provided:

"If no beneficiary within the permitted class be designated by the insured . . . or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons, within the permitted class of beneficiaries as would under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy. If no such person survive the insured, then there shall be paid to the estate of the insured an amount equal to the reserve value, . . ."

Section 14, chapter 553, 43 Stat. at Large, p. 1310, March 4, 1925, amends § 303 of the World War Veterans' Act, 1924, approved June 7, 1924, and provides as follows:

"If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured . . . or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, . . . When any person to whom such insurance is now awarded dies . . . then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance so awarded to such person . . . This section shall be deemed to be in effect as of October 6, 1917."

A regulation (Bulletin No. 1) adopted by the Federal bureau under date of October 15, 1917, under au-

thority of the War Risk Insurance Act, reads as follows:

"If no beneficiary within the permitted class be designated by the insured, either in the insured's lifetime or by his last will and testament, or if any of the above designated beneficiaries is or becomes disqualified or does not survive the insured (or if any of the above designated beneficiaries shall survive the insured but shall not receive all the installments) then the remaining installments shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the insured's place of residence, be entitled to his personal property in case of intestacy."

Even if we were to give no force whatever to the foregoing regulation of the bureau, we believe the whole intent and purpose of these acts is to exhaust the proceeds of this insurance for the benefit of those within the designated class, and that, so long as there are such persons, they must take, not as heirs at law, but as beneficiaries under the war risk insurance policy. It seems to us that any other reasoning would be contrary to the text and import of the entire act. If it be said that the proceeds of a policy shall be distributed to the heirs at law of the named beneficiaries when there exist persons "within the permitted class," then the act does not "give to every enlisted man . . . greater protection for themselves and their dependents." It would also seem inconsistent for us to say that, although the act permits the insured to select the beneficiary, "but only within the classes . . . provided," still, by the death of the designated beneficiary, some person or persons outside of "the permitted class," probably a total stranger, shall receive the residue. We do not believe that is the intention of the act, and we do not believe that it so provides. Benefits under such a policy of insurance as we have here,

464

first accrue to the designated beneficiary, who has but a lifetime interest, subject to certain limitations, and then to all of the beneficiaries in the order of their priority, "within the permitted class." All of. these last-mentioned beneficiaries have an inchoate or prospective benefit, and if finally they do realize from the insurance, it must be as beneficiaries and not as heirs at law. The payment of .the residue into the estate of the insured is only procedural, and is nevertheless to be distributed only to persons "within the permitted class."

This court now feels that the proceeds of the insurance policy should be distributed, in the estate of LeRoy W. Cross, to those living at the time of the distribution who come within the permitted class, in the order of their priority under the laws of the state of Washington, they to receive as beneficiaries under the policy, and not as heirs at law. This conclusion would not permit the imposition of a state inheritance tax, as § 22, chapter 320, of the act of June 7, 1924, provides that,

". . . the compensation, insurance and maintenance and support allowance payable under Titles II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Titles II, III or IV; and *shall be exempt from all taxation;* . . ." 43 U. S. Stat. at Large, p. 613.

While there is undoubtedly a diversity of opinion, we feel that the weight of authority and the better reasoned cases support our views. In the case of *Cassarello v. United States,* 271 Fed. 486, which contains facts similar to those in the instant case, the court considered the congressional records as well as the rules and regulations of the Federal department administering the act. From that opinion we quote the following pertinent matter:

". . . rules and regulations prescribed by the department of the government in pursuance of a statutory authority have the force of law.

"In arriving at a proper decision, this court may therefore turn for assistance, not only to the certificate of insurance, but also to the application for insurance, and the rules and regulations of the department, as well as the act itself, and, where the wording of the act is somewhat obscure, it may seek the legislative intent as expressed by the authors of the law, as a guide.

"In considering these various provisions of the regulations, application, and certificate, it is necessary also to keep in mind the words and purpose of the act. Article 3 of the act dealt with compensation for the soldier and a limited class of dependents, in case of his disability while in active service, or for such dependents in case of his death. It partakes of the nature of a pension. Article 4, containing the insurance provisions, states:

" 'Sec. 400. That in order to give to every commissioned officer and enlisted man and to every member of the Army Nurse Corps (Female) and of every Navy Nurse Corps (Female) when employed in active service under the War Department or Navy Department greater protection for themselves and their dependents than is provided in Article 3, the United States . . . shall grant insurance,' etc.

"Protection for the soldier and his dependents is the primary object of the act. It purposely limits the beneficiaries. Section 402 (Comp. Stat. 1918, Comp. St. Ann. Supp. 1919, Sec. 514 uuu.):

" 'The insurance shall not be assignable, and shall not be subject to the claims of creditors of the insured or of the beneficiary. It shall be payable only to a spouse, child, grandchild, parent, brother or sister.'

"By the word 'only' is limited expressly the claim of beneficiaries. In the same section it further provides:

" 'Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such

beneficiary or beneficiaries, but only within the classes herein provided.' "

"This negatives any idea of a right vested during the lifetime of the insured. Nor is there anything in the language of the act itself, or as appearing from the discussions of the bill by committee members on the floor, to lend countenance to any construction that a beneficiary had a vested right in installments not yet accrued, even after the death of the insured, but the contrary seems to have been in mind.

"Senator Williams, in charge of the bill in the Senate, made use of the following language:

" 'It (the government) is not going into the insurance business at all. In the first place, it has confined its activities to the soldiers and sailors in the service. In the second place, it confines the beneficiaries to the soldiers' and sailors' dependent families.' Cong. Record. Vol. 55, pt. 8, Oct. 3, 1917, P. 7690.

"Comptroller Warwick, in an opinion to the Secretary of the Treasury, July 5, 1919, said:

" 'This insurance feature of the law is not an out-and-out contract of insurance on an ordinary business basis; neither is it a pension, but it partakes of the nature of both.' "

Both Senator Williams and Comptroller Warwick here touched upon a vital distinction to be borne in mind, that this is neither a pension nor insurance. It partakes in some respects of the nature of both. It is not governed by the law of either, but is governed by the statute creating it, and must be construed in accordance therewith. Section 402 of the bill, as originally introduced, in naming the class of beneficiaries, contained the provision:

"And to such other persons as may be provided from time to time by regulation."

These words were stricken out by Senate amendment 108. This shows clearly the intention of Congress to limit and fix the class of beneficiaries, and to prevent any extension even by the bureau. The installments

are intended for the soldier's dependents within a limited class, and only these.

Such was the construction placed upon the act by the officers of the bureau charged with the duty of administering it. Express provision was made for this situation in Bulletin No. 1, *supra*.

"It appears, therefore, in view of all that has been shown, quite clear that a beneficiary, upon the death of the insured, did not take a vested interest in installments of war risk insurance not yet accrued, but that he was bound by the provisions pertaining thereto in the rules and regulations, and the provisions of the application, expressly made a part of the contract. Pasquale Celetti, the beneficiary, could not therefore, pass the unaccrued installments by his will to his executor, Savino Cassarello. These amounts must be paid to such persons, within the permitted class of beneficiaries, as would, under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy." *Cassarello v. United States*, 271 Fed. 486.

See, also, *Succession of Geier*, 155 La. 167, 99 South. 26, 32 A. L. R. 353; *Sutton's Executors v. Barr's Administrators*, 219 Ky. 543, 293 S. W. 543.

■ We have quoted very fully from the foregoing opinion for the reason that the act of congress here in question is there fully reviewed and the logic of the opinion seems unanswerable. Certainly the beneficiary who has not as yet received the money from the government cannot make a disposition of the money not permitted to the soldier himself. The War Risk Insurance Act was to take the place of, and be in a measure substituted for, unsatisfactory pension legislation, but the fundamental purpose of the act was, and is, at all times, to provide for the dependents and relatives of the soldier within the designated class, and the government reserved and assumed the right to determine that only those of the designated dependents and rel-

atives were to receive the benefits, provided there were members of this class in existence—this in consideration of its furnishing the insurance at less than cost.

In the instant case, Margaret Cross did not, in so far as the war risk insurance was concerned, inherit anything. She received during her lifetime as beneficiary only, and at her death the other beneficiaries within the permitted class were substituted for Margaret Cross as beneficiaries.

We now hold that the proceeds of the war risk insurance of LeRoy W. Cross should be distributed out of the estate of said insured to such persons, within the permitted class of beneficiaries now prescribed by the War Risk Insurance Act, as would, under the laws of this state, be entitled to the insured's personal property in case of intestacy, and that those so taking do so as beneficiaries under said policy, and not as heirs at law, and that the proceeds so distributed are free from our state inheritance tax. Without the addition of the war risk insurance money, the estate of Margaret Cross is free from any state inheritance tax.

The judgment is affirmed, and the trial court is instructed to proceed by appropriate orders to distribute this war risk insurance money in accordance with this opinion.

MILLARD, BEALS, FULLERTON, PARKER, MAIN, and TOLMAN, JJ., concur.