BANKERS TRUST COMPANY AND HAZEL B. FELLNER, AS EXECUTORS OF THE WILL OF IRVING S. FELLNER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76910.   Promulgated December 19, 1935.

*Robert D. Gerstenlauer, Esq.*, for the petitioners.
*Eugene G. Smith, Esq.*, for the respondent.

### OPINION.

SEAWELL: The decedent, a veteran of the United States Army, died October 30, 1932, leaving a policy of life insurance in the amount of $10,000 issued by the Bureau of War Risk Insurance, now known as the Veterans' Administration. The decedent's wife, Hazel B. Fellner, was the beneficiary named in the policy and she received the amount of the policy less an outstanding loan thereon of $1,300. While the stipulation of facts contains nothing respecting other policies of insurance left by the decedent, it appears from the briefs filed on behalf of the parties that he left in excess of $40,000 of insurance payable to beneficiaries. In his determination of a deficiency of $518.38 in estate tax, the respondent included the face amount of the policy in gross estate and deducted therefrom the outstanding loan of $1,300 as a debt of the decedent. The sole issue is whether the face amount of the policy is includable in gross estate of the decedent for estate tax purposes.

Section 302 (g) of the Revenue Act of 1926, the applicable statute, (section 401 (c), Revenue Act of 1932), provides that " The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." Like provisions appeared in prior acts. Sec. 402 (f), 1918 and 1921 Acts; sec. 302 (g), 1924 Act.

The Commissioner has always construed the statutes as embracing all forms of life insurance, without any exceptions. Art. 32, Regulations 37; art. 27, Regulations 63; art. 25, Regulations 68 and 70. The reenactment of the provision in later acts in the light of such administrative interpretation is strong evidence that Congress approved the regulation. *Brewster* v. *Gage*, 280 U. S. 327.

The petitioners contend that this general provision of the statute has no application to the insurance policy in question on the ground that the proceeds of such insurance are exempt from Federal estate tax under the provisions of section 22 of the World War Veterans' Act, enacted June 7, 1924, 43 Stat. 613, providing, in part, that:

The compensation, insurance, and maintenance and support allowance payable under Titles II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Titles II, III, and IV; and shall be exempt from all taxation. * * *

A like provision appeared in a prior act, as amended June 25, 1918. 40 Stat. 609. Since the submission of this proceeding the provision has been repealed by amendments to the act, approved August 12, 1935. The substituted provision reads:

Sec. 3. Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments. * * *

\* \* \* \* \* \* \*

Sec. 5. That this Act shall take effect and be in force from and after its passage, but the provisions hereof shall apply to payments made heretofore under any of the Acts mentioned herein.

In *Trotter* v. *Tennessee*, 290 U. S. 354, the Court said: "Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. *Chicago Theological Seminary* v. *Illinois*, 188 U. S. 662. On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers." See *Waynesboro Manufacturers Association*, 1 B. T. A. 911; *Garden Homes Co.*, 26 B. T. A. 441.

The precise question involved here has never been passed upon by this Board or the courts. Cases involving state inheritance and Federal estate tax on tax-exempt securities, however, appear to announce a rule leading to the answer to the question.

In *Plummer* v. *Coler*, 178 U. S. 115, the decedent left a will in which he bequeathed certain United States bonds issued pursuant to a Federal statute providing that the "bonds and interest thereon shall be exempt from the payment of all taxes or duties of the United States, as well as from taxation in any form by or under state, municipal or local authority." Pursuant to such statute, the exemption was set forth on the face of each bond. In holding that the bonds were subject to inheritance taxes imposed by the laws of New York, the Court, from a review of many state and Federal cases relating to the question, said in substance that the state may

properly impose a tax upon the right to take property by will or descent, measured by the value of the property passing, regardless of the fact that the estate may include Federal bonds. Such a tax, it said, "is a tax not upon United, States bonds if they happen to compose a part of the capital of a corporation or a part of the property of a decedent, but upon the rights and privileges created and regulated by the State."

In *Murdock* v. *Ward*, 178 U. S. 139, the decedent's estate consisted, in part, of Government bonds and interest-bearing evidences of debt of the United States, which were made subject to inheritance and legacy taxes imposed by the Revenue Act of June 13, 1898. The bonds were issued under statutes exempting them from state and Federal taxation and such an exemption was incorporated into the bonds. The Court stated that it was unable to distinguish the case from *Plummer* v. *Coler*, *supra*, and held, under the reasoning of that case, that the tax was properly imposed.

The case of *Greiner* v. *Lewellyn*, 258 U. S. 384, involved the question of whether in determining the net value of the estate of a decedent under the Revenue Act of 1916 it was proper to include in gross estate bonds issued by political subdivisions of the State of Pennsylvania. In holding that such property may be included in arriving at the net estate, the Court said:

* * * A State may impose a legacy tax on a bequest to the United States, *United States* v. *Perkins*, 163 U. S. 625, or on a bequest which consists wholly of United States bonds, *Plummer* v. *Coler*, 178 U. S. 115; *Orr* v. *Gilman*, 183 U. S. 278. Likewise the Federal Government may impose a succession tax upon a bequest to a municipal corporation of a State, *Snyder* v. *Bettman*, 190 U. S. 249, or may, in determining the amount for which the estate tax is assessable, under the Act of 1916, include sums required to be paid to a state as inheritance tax, for the estate tax is the antithesis of a direct tax, *New York Trust Co.* v. *Eisner*, *supra*. Municipal bonds of a State stand in this respect in no different position from money payable to it. The transfer upon death is taxable, whatsoever the character of the property transferred and to whomsoever the transfer is made. It follows that in determining the amount of decedent's net estate municipal bonds were properly included.

Federal Farm Loan bonds issued under a statute (39 Stat. 360), providing that "they and the income derived therefrom shall be exempt from Federal, State, municipal and local taxation", are includable in gross estate for estate tax purposes under the Revenue Act of 1926. *Edgar A. Igleheart et al., Executors*, 28 B. T. A. 888; affd., 77 Fed. (2d) 704. In sustaining the Board's conclusion, the court pointed out the well established principle that:

* * * The estate tax is not a tax on property. It is an excise on the privilege of transmitting property of a decedent upon his death, the amount of the tax being measured by the value of the property transmitted. *Chase National Bank* v. *United States*, 278 U. S. 327; *New York Trust Co.* v. *Eisner*, 256 U. S. 345; *Knowlton* v. *Moore*, 178 U. S. 41.

If, as the authorities hold, a state may impose an inheritance tax or succession tax measured by the value of the legacy even though it may include tax-exempt Federal bonds, and the United States may impose an estate tax on the transmission of property at death, including tax-exempt municipal and Federal securities, it seems to follow by the same reasoning that the United States may include, as part of the decedent's gross estate, the proceeds of policies of life insurance issued by the Veterans' Administration, irrespective of a statute providing that the payments shall be exempt from taxation.

The petitioners cite decisions of state courts as supporting their view that the proceeds of the policy of insurance in question are exempt from Federal estate tax. *In re Cross' Estate*, 152 Wash. 459; 278 Pac. 414, one of the cases relied upon, the soldier died intestate in 1918, leaving a father, mother, brothers and sisters and a policy of War Risk insurance in which his mother was named beneficiary. The mother died in 1926 leaving her estate to her sons and daughters. The statute under which the policy was issued limited the beneficiaries to a class of persons closely related to the insured, and provided that in case the beneficiary designated in the policy died before receiving all of the monthly installment payments of the proceeds of the policy, the reserve value of the policy should be paid to the estate of the insured. In holding that the proceeds of the insurance were free from state inheritance tax, the court relied more upon its ruling that the money should go to the permitted class in the order of their priority under the laws of the state, who took not as heirs at law, but as beneficiaries, than upon the provision in the Federal statute exempting the insurance " from all taxation." In other words, the court held that the right to take did not arise under the statutes of descent and distribution of the state, but under the contract of insurance with the Federal Government, hence nothing passed under the laws of the state. The other cases cited in which like conclusions were reached follow the same reasoning. *Watkins* v. *Hall*, 147 S. E. 876 (W. Va.); *Tax Commission of Ohio* v. *Rife*, 27 Ohio App. 516; 162 N. E. 398; *Succession of Geier*, 155 La. 167; 99 So. 26; *In re Harris' Estate*, 179 Minn. 450; 229 N. W. 781. In New York the contrary has been held. *In re Schaeffer's Estate*, 224 N. Y. S. 305.

The case of *Trotter* v. *Tennessee*, *supra*, establishes only that real estate purchased by a guardian of a disabled veteran out of compensation and disability insurance money received from the Government under the World War Veterans' Act of 1924 is subject to county and state real property taxes, a question now settled by the act itself.

We find nothing disclosing legislative purpose to give the proceeds of policies of Government life insurance a status for estate tax purposes different from tax-exempt Federal bonds and securities. In

our opinion the provisions of section 302 (g) of the 1926 Act are controlling. It follows that the respondent did not err. in including the insurance in question in the decedent's gross estate.

Reviewed by the Board.

*Decision will be entered for the respondent.*