## Ace Estate

*Thomas J. Jones,* for accountant.

*Bernard J. Brown* and *Carl Carey,* for Commonwealth.

SIROTNAK, P. J., November 30, 1960.—The first and final account of Thomas J. Jones, Administrator of the Estate of John Ace, Jr., deceased, after publication in accordance with law and the rules of court, was called for audit on Thursday, September 15, 1960, at 10 a.m., and after continuances thereof and proceedings therein the audit was duly closed on Thursday, October 20, 1960.

From the petition for distribution, the account and the proceedings at the audit we find the following facts:

Decedent, John Ace, Jr., died November 1, 1958, intestate, unmarried, and leaving to survive him his mother, Abigail Ace.

Under the provisions of the intestate laws of the Commonwealth of Pennsylvania the only person entitled to the estate embraced in the account, other than as creditors, is Abigail Ace, mother of decedent.

The Commonwealth presented a claim in the sum of $12,376.67 for its care and maintenance of decedent, John Ace, Jr., at the Clarks Summit State Hospital from May 4, 1944, to November 1, 1958, the date of death. The accountant contested payment and a hearing was held on the matter wherein it was established that decedent, an incompetent veteran, in his lifetime did receive from the Veterans Administration monthly benefit payments of $72 for his non-service-connected disability.

The Veterans Administration, in conformity with the Act of Congress so providing, actually remitted to the superintendent of the hospital a monthly sum of $30 for necessities of decedent during his stay at the State institution. No payments were ever made on account of care and maintenance charges. All parties agree to the accuracy of the amount of the claim of the Commonwealth. The Veterans Administration retained the difference between the $30 veteran's month-

ly disbursement and the $72 monthly benefit payment, in decedent's lifetime, for his benefit, in a "fund due incompetent beneficiary," and after his death paid the accumulation to the administrator of his estate, the accountant herein. Under the Act of Congress and amendments applicable, the Veterans Administration could make payment to the personal representative of the estate.

It should be noted that under the existing amendment (Pub. L. 86-146, §1(a) Aug. 7, 1959, 73 Stat. 297, 38 U. S. C. A. §3202) payment can now be made only to designated persons, and Congress omitted the personal representative of an estate as a payee of such benefits. After administration costs, there is a net balance in the estate of $4,617.15, and the crucial question is whether the Commonwealth is entitled to the payment for its care and maintenance of decedent out of the accumulated benefits turned over to the accountant by the Veterans Administration.

The cases which hold that the Commonwealth is a creditor are too numerous to mention: Dilijonas Estate, 16 D. & C. 2d 142. See also Beall Estate, 384 Pa. 14. In the latter case the estate's sole assets were the proceeds of a National Service policy wherein decedent named his estate the beneficiary. The Veterans Administration made payment on the policy to decedent's executor. The Supreme Court held that the insurance proceeds in the hands of the insured's executor were distributable to his two children, free and clear of claims of creditors, and Mr. Justice Jones, speaking for the court, at pages 23 and 24, said:

". . . The exempted proceeds of the National Service insurance policy do not pass as a part of the deceased insured's estate but go to his two children, his designated legatees. The will merely identifies the recipients but does not operate to transfer the insurance fund to them. That occurs by virtue of federal law.

Just as in a case of intestacy, 'The intestate laws [of the State] do not operate upon the decedent's [exempted government insurance], but are referred to in order to determine who shall take the proceeds of the insurance . . .' ": Wanzel's Estate, [295 Pa. 419, 424].

It is now well settled that the Acts of Congress, supra, protect benefits paid to veterans by the Veterans Administration from claims of all creditors, including claims of the Commonwealth itself for State taxes. See Beall Estate, supra.

The accountant cites Pub. L. 85-857, September 2, 1958, 72 Stat. 1229, 38 U. S. C. A. §3101, which reads:

"Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under chapter 19 of this title, or of servicemen's indemnity," to support his contesting of the Commonwealth's claim and maintains that he is duty-bound under Federal law to turn over the net balance to Abigail Ace, surviving parent of the decedent. The Act of Congress, September 2, 1958, Pub. L. 85-857, 72 Stat. 1234, 38 U. S. C. A. §3203, subsection (2) (A), provides:

"(2) (A)  In the event of the death of any veteran subject to the provisions of this section, while receiv-

ing hospital treatment, institutional . . . care, or before payment of any lump sum authorized herein, such lump sum shall be paid in the following order of precedence: . . . fourth, if either father or mother is dead, then to the one surviving; . . ."

In the instant case, the Veterans Administration could have made payment directly to the surviving mother. That payment was made rather to the personal representative of decedent's estate did not cause the fund in question to lose the characteristics of vetterans' benefit payments protected by Acts of Congress, supra, from the claims of all creditors. The accountant took it as custodian or trustee, to turn it over to such designated person or persons provided by Acts of Congress, supra. This status of the accountant in relation to these funds is directly ascribable to the explicit language of the Act of Congress, supra, which spells out the order of direct payment to designated persons. As Mr. Justice Kephart observed in Fisher's Estate, 302 Pa. 516, 523, with respect to war risk insurance: "Congress was not interested in setting up a fund for creditors and excisors." And at pages 523-24, he said: "The estate is a mere conduit to carry out the intent of Congress until the fund reaches the designated persons."

It is the opinion of the court, and we so find, that the Acts of Congress, supra, forbid the payment out of the fund in question to the Commonwealth as a credit against its claim for the care and maintenance of decedent. The fund is also federally exempt from the payment of inheritance taxes to the Commonwealth: The claims are, therefore, disallowed.

It is ordered and decreed that Thomas J. Jones, administrator as aforesaid, do make the distribution herein awarded to the persons entitled thereto.

And now, November 30, 1960, the adjudication is confirmed nisi.